# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

MICHAEL WAYNICK,

    Plaintiff,

    v.

SRC ENERGY INC., LYNN A. PETERSON, RAYMOND E. MCELHANEY, JACK AYDIN, DANIEL E. KELLY, PAUL KORUS, and JENNIFER S. ZUCKER,

    Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

---

Plaintiff Michael Waynick ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against SRC Energy Inc. ("SRC" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between SRC and PDC Energy, Inc. ("PDC").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of SRC common stock.

7. Defendant SRC is an oil and natural gas company that engages in the acquisition, exploration, development, and production of oil, natural gas, and natural gas liquids primarily in the Denver-Julesburg Basin of Colorado. The Company is incorporated in Colorado with principal executive offices in Denver, Colorado. The Company's common stock trades on the NYSE American under the ticker symbol, "SRCI."

8. Defendant Lynn A. Peterson ("Peterson") is the President, Chief Executive Officer ("CEO"), and Chairman of the Board of the Company.

9. Defendant Raymond E. McElhaney ("McElhaney") is Lead Director of the Company.

10. Defendant Jack Aydin ("Aydin") is a director of the Company.

11. Defendant Daniel E. Kelly ("Kelly") is a director of the Company.

12. Defendant Paul Korus ("Korus") is a director of the Company.

13. Defendant Jennifer S. Zucker ("Zucker") is a director of the Company.

14. Defendants Peterson, McElhaney, Aydin, Kelly, Korus, and Zucker are collectively referred to herein as the "Individual Defendants."

15. Defendants SRC and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

16. PDC is an exploration and production company that acquires, explores, develops, and produces crude oil, natural gas, and natural gas liquids in the United States, with operations in Colorado and Texas. PDC is incorporated in Delaware with principal executive offices located in Denver, Colorado. PDC's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "PDCE."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On August 26, 2019, SRC and PDC issued a press release announcing that they entered into a definitive merger agreement whereby PDC would acquire SRC in an all-stock transaction. Under the terms of the agreement, SRC shareholders will receive a fixed exchange ratio of 0.158 PDC shares for each share of SRC common stock they own. The press release states, in pertinent part:

## PDC Energy Announces Strategic Combination with SRC Energy in All-Stock Transaction

August 26, 2019 06:00 ET | **Source:** PDC Energy, Inc.

*Creates Premier Mid-Cap Operator with Peer-Leading Cost Structure and Free Cash Flow Profile*

*Increases Share Repurchase Program from $200 million to $525 million*

*Immediately Accretive to all Key Financial Metrics*

*Companies to Host a Joint Investor Call Today at 8:00 a.m. ET / 6:00 a.m. MT*

DENVER, Aug. 26, 2019 (GLOBE NEWSWIRE) -- PDC Energy, Inc. ("PDC" or the "Company") (NASDAQ: PDCE) and SRC Energy, Inc. ("SRC") (NYSE: SRCI) today announced they have entered into a definitive merger agreement under which PDC will acquire SRC in an all-stock transaction valued at approximately $1.7 billion, including SRC's net debt of approximately $685 million as of June 30, 2019. Under the terms of the agreement, SRC shareholders will receive a fixed exchange ratio of 0.158 PDC shares for each share of SRC common stock, representing an implied value of $3.99 per share based on the PDC closing price as of August 23, 2019. The transaction, which is expected to close in the fourth quarter of 2019, has been unanimously approved by each company's board of directors.

**Key Transaction Highlights:**

\* \* \*

- Materially enhances free cash flow profile and enhances ability to return additional capital to shareholders. Pro forma free cash flow is estimated to be approximately $800 million from the third quarter of 2019 through year-end 2021, assuming $55 per barrel NYMEX. PDC has increased and extended its existing share repurchase program from $200 million to $525 million, with a target completion date of year-end 2021. Year-to-date, PDC has repurchased $125 million of its shares and plans to utilize approximately 50 percent of the estimated $800 million of free cash flow in the same period to complete the remaining $400 million repurchase program.

\* \* \*

- The transaction is expected to be immediately accretive to key 2020 metrics, including: free cash flow per share, cash return on capital invested ("CROCI"), net asset value, G&A per Boe, LOE per Boe, leverage ratio and inventory life.

**Transaction Details**

Under the terms of the agreement, SRC shareholders will receive a fixed exchange ratio of 0.158 PDC shares for each share of SRC common stock they own, representing an implied value of $3.99 per SRC share based on PDC's closing common stock price on August 23, 2019, or $1.7 billion in the aggregate including the assumption of approximately $685 million in debt. The consideration represents a premium of 6.8 percent to the 30-day average exchange ratio of 0.148x. Upon closing of the transaction, PDC shareholders will own approximately 62 percent of the combined company, and SRC shareholders will own approximately 38 percent, on a fully diluted basis. The all-stock transaction is intended to be tax-free to SRC shareholders.

**Governance and Leadership**

Upon closing, PDCs' board of directors will be expanded to nine directors, expected to include two members from the SRC board of directors. PDC's board of directors also plans to form a three-member group focused on integration planning and opportunities for ongoing corporate synergies and cost efficiencies. The combined company will be led by PDC's executive management team and will remain headquartered in Denver, Colorado.

**Timing and Approvals**

The transaction, which is expected to close in the fourth quarter of 2019, is subject to customary closing conditions and the satisfaction of certain regulatory approvals, including the approval of PDC and SRC shareholders.

**Advisors**

J.P. Morgan is serving as exclusive financial advisor to PDC, and Wachtell, Lipton, Rosen & Katz is serving as PDC's legal counsel. Citi and Goldman Sachs & Co. are serving as financial advisors to SRC and Akin Gump Strauss Hauer & Feld LLP is serving as its legal counsel.

18. On October 23, 2019, Defendants authorized or caused the dissemination of a joint Registration Statement on Form S-4 with the SEC (the "Registration Statement"), which amended the joint Registration Statement on Form S-4 filed with the SEC on September 25, 2019.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Registration Statement, which recommends that SRC shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) SRC's and PDC's financial projections; (ii) the financial analyses performed by SRC's financial advisors, Citigroup Global Markets Inc. ("Citi") and Goldman Sachs & Co. LLC ("Goldman"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Citi and Goldman.

20.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the SRC Board of Directors and SRC's Reasons for the Merger; (ii) Certain Unaudited Forecasted Financial Information; and (iii) Opinions of Citi and Goldman Sachs, SRC's Financial Advisors.

21.     Plaintiff may seek to enjoin the anticipated shareholder vote on the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. Unless remedied, SRC shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning SRC's and PDC's Financial Projections**

22.     The Registration Statement omits material information concerning SRC's and PDC's financial projections.

23.     The Registration Statement provides that "the management of SRC has prepared the forecasted financial information . . . and provided it to the SRC board and to PDC in connection

with each company's evaluations of the merger and to each company's financial advisor(s) for their use in advising their respective clients and reliance in connection with their respective financial analyses and opinions[.]"

24. The Registration Statement provides that "certain non-public financial forecasts covering several years that were prepared by PDC's management were provided to its board and to SRC in connection with each company's evaluations of the merger and to each company's financial advisor(s) for their use in advising their respective clients and reliance in connection with their respective financial analyses and opinions[.]"

25. The Registration Statement provides "tables present[ing] select unaudited forecasted financial and operating information of SRC for the fiscal years ending 2019 through 2021 prepared by SRC's management" (the "SRC Management Projections for SRC").

26. The Registration Statement, however, fails to disclose the following concerning the SRC Management Projections for SRC: (1) all line items used to calculate (i) EBITDA, and (ii) Operating Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

27. The Registration Statement provides that:

SRC management also provided to the SRC board and to Citi and Goldman Sachs for their use and reliance in connection with each financial advisor's financial analyses and opinion certain unaudited forecasted financial and operating information with respect to PDC that was provided by PDC management and summarized in this joint proxy statement/prospectus under the caption "— *Summary of Certain PDC Forecasted Financial Information*."

28. Under the caption, "*Summary of Certain PDC Forecasted Financial Information*[,]" the Registration Statement provides: (1) "tables present[ing] select unaudited forecasted financial and operating information of PDC for the fiscal years ending 2019 through 2021 prepared by PDC's management" (the "PDC Management Projections for PDC"); and (2) "tables set[ting] forth a summary of th[e] adjusted forecasted financial and operating information

7

regarding SRC for the years 2019 through 2021 as prepared by PDC management" (the "PDC Management Projections for SRC," and together with the PDC Management Projections for PDC, the "PDC Projections").

29.     The Registration Statement, however, fails to disclose the following concerning the PDC Projections: (1) all line items used to calculate (i) Adjusted EBITDAX, and (ii) Operating Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

30.     The Registration Statement fails to disclose the combined company's pro forma forecasts.[1]

31.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

---

[1] Although Goldman relies on the "PDC Pro Forma Forecasts" in rendering its fairness opinion, these forecasts have not been provided in full.

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited November 8, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

32. The disclosure of SRC's and PDC's projected financial information is material because it would provide SRC shareholders with a basis to project SRC's and the combined company's future financial performance and would allow shareholders to better understand the financial analyses performed by Citi and Goldman in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by SRC and its financial advisors, SRC shareholders are unable to determine how much weight, if any, to place on the financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

33. Accordingly, in order to cure the materially misleading nature of SRC's and PDC's projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

34. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to SRC shareholders.

**2. Material Omissions Concerning Citi's and Goldman's Financial Analyses**

35. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Citi and Goldman.

36. The valuation methods, underlying assumptions, and key inputs used by Citi and Goldman in rendering their purported fairness opinions must be fairly disclosed to SRC shareholders. The description of Citi's and Goldman's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, SRC shareholders are unable to fully understand these fairness opinions and

analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SRC shareholders.

### a. Citi's Financial Analyses

37. The Registration Statement fails to disclose the individual multiples and financial metrics of each of the selected companies utilized by Citi in its "*Selected Public Companies Analyses*[.]"

38. The Registration Statement fails to disclose the following concerning Citi's "*Net Asset Value Analysis*" of SRC: (1) the unlevered, after-tax free cash flows that SRC was projected to generate, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the range of discount rates of 9.5% to 11.0%; and (3) the net present value (as of June 30, 2019) of SRC's estimated post-tax corporate expenses, net hedge gains and losses, and SRC's estimated net debt as of June 30, 2019.

39. The Registration Statement fails to disclose the following concerning Citi's "*Net Asset Value Analysis*" of PDC: (1) the unlevered, after-tax free cash flows that PDC was projected to generate, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the range of discount rates of 8.3% to 9.6%; and (3) the net present value (as of June 30, 2019) of PDC's estimated post-tax corporate expenses, net hedge gains and losses, additional payments from the sale of PDC's midstream assets, and PDC's estimated net debt as of June 30, 2019.

40. With respect to Citi's analysis of Wall Street research analysts' price targets for SRC common stock and PDC common stock, the Registration Statement fails to disclose the following: (1) the individual price targets for SRC and PDC observed by Citi in its analysis; (2)

the sources of those price targets; and (3) the individual inputs and assumptions underlying the discount rates of 11.6% for SRC common stock and 10.3% for PDC common stock.

### b. *Goldman's Financial Analyses*

41. The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis—SRC Standalone*": (1) the estimates of unlevered free cash flow for SRC for July 1, 2019 through December 31, 2024, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.50% to 9.00%, and (ii) EBITDA multiple range of 3.0x to 4.5x; (3) the range of illustrative terminal values for SRC; (4) SRC's net debt as of June 30, 2019; and (5) the number of fully diluted outstanding shares of SRC common stock, as provided by the management of SRC.

42. The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis—PDC Standalone*": (1) the estimates of unlevered free cash flow for PDC for July 1, 2019 through December 31, 2024, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.5% to 9.0%, and (ii) EBITDA multiple range of 2.5x to 4.0x; (3) the range of illustrative terminal values for PDC; (4) PDC's net debt as of June 30, 2019; (5) the estimated present value of the unconditional contingent payment to be made to PDC in connection with the sale of its midstream assets, as provided by the management of PDC; and (6) the number of fully diluted outstanding shares of PDC common stock.

43. The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis—Implied Valuation Uplift*": (1) the estimates of unlevered free cash flow for the pro forma combined company for July 1, 2019 through December 31, 2024, and all underlying line items thereto; (2) the individual inputs and

assumptions underlying the (i) discount rates ranging from 7.5% to 9.0%, and (ii) EBITDA multiple range of 2.75x to 4.25x; (3) the range of illustrative terminal values for the pro forma combined company; (4) the pro forma net debt for the combined company as of June 30, 2019; (5) the estimated present value of the unconditional contingent payment to be made to PDC in connection with the sale of its midstream assets; and (6) the number of fully diluted outstanding shares of the pro forma combined company.

44. The Registration Statement fails to disclose the following concerning Goldman's *Illustrative Net Asset Value Analysis—SRC*: (1) the after-tax future cash flows that SRC could be expected to generate from its existing proved developed reserves, its development plan for proved undeveloped reserves and development of additional undeveloped reserves, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 9.0%; and (3) the present value of estimated mark to market commodity hedges, the present value of general and administrative costs, the estimated face value of SRC's net debt as of June 30, 2019, and the present value of taxes payable by SRC.

45. The Registration Statement fails to disclose the following concerning Goldman's *Illustrative Net Asset Value Analysis—PDC Standalone*: (1) the after-tax future cash flows that PDC could be expected to generate from its existing proved developed reserves, its development plan for proved undeveloped reserves and development of additional undeveloped reserves, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 9.0%; and (3) the present value of estimated mark to market commodity hedges, the present value of net operating losses, the present value of general and administrative costs, the estimated face value of PDC's net debt as of June 30, 2019, the present value of taxes payable by PDC, and certain contingent payments due by PDC.

46. The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis—SRC*": (1) the individual inputs and assumptions underlying the (i) range of illustrative one-year forward EV/EBITDA multiples of 3.0x to 4.5x, and (ii) illustrative discount rate of 8.6%; and (2) the number of fully diluted outstanding shares of SRC common stock, as provided by management of SRC.

47. The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis—PDC Standalone*": (1) the individual inputs and assumptions underlying the (i) range of illustrative one-year forward EV/EBITDA multiples of 2.5x to 4.0x, and (ii) illustrative discount rate of 8.6%; and (2) the number of fully diluted outstanding shares of PDC common stock, as provided by management of PDC.

48. The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis—Implied Valuation Uplift*": (1) the individual inputs and assumptions underlying the (i) range of illustrative one-year forward EV/EBITDA multiples of 2.75x to 4.25x, and (ii) illustrative discount rate of 8.6%; and (2) the number of fully diluted outstanding shares of for the pro forma combined company.

49. The Registration Statement fails to disclose the following concerning Goldman's "*Premia Analysis*": (1) the transactions Goldman utilized in its analysis; and (2) the mean and median premiums paid in the transactions utilized by Goldman in its analysis.

**3. Material Omissions Concerning Citi's and Goldman's Potential Conflicts of Interest**

50. The Registration Statement omits material information concerning Citi's and Goldman's potential conflicts of interest.

51. The Registration Statement states that "Citi [and Goldman] may [each] receive an additional fee of up to $3.5 million at SRC's sole discretion[,]" but fails to disclose the

circumstances under which Citi and Goldman would receive such fees, and whether SRC intends to pay Citi and Goldman such fees.

52.     Disclosure of a financial advisor's conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's conflicts of interest may inform shareholders on how much weight to place on that analysis. This is even more so here, where Defendants failed to conduct a "marketing process to solicit interest from other companies in a potential transaction[.]"

53.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to SRC shareholders.

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

56.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use

of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

57. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

58. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

64. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

65. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: November 8, 2019                                  Respectfully submitted,

                                                                                   **HALPER SADEH LLP**

                                                                                   /s/ Daniel Sadeh
                                                                                   Daniel Sadeh, Esq.

                                    375 Park Avenue, Suite 2607
                                    New York, NY 10152
                                    Telephone: (212) 763-0060
                                    Facsimile: (646) 776-2600
                                    Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*